**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 7, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ZONTA V. WEST,

       Petitioner - Appellant,

v.

JIM FARRIS, Warden,

       Respondent - Appellee.

No. 14-6107
(D.C. No. 5:13-CV-0017-M)
(W.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

Zonta Vincent West seeks a certificate of appealability ("COA") to appeal the

district court's denial of his 28 U.S.C. § 2254 habeas petition. We deny a COA and

dismiss the appeal.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

On November 7, 2008, while delivering pizza, Jeremy Moore was shot dead outside of an apartment complex in Oklahoma City. Police investigators discovered that the pizza was ordered from a telephone at West's home in a nearby apartment complex.

Under videotaped questioning, West claimed that an acquaintance, Rondell Griffin, used his phone to order the pizza, intending to rob the delivery person. West revealed substantial knowledge of the crime that only a participant was likely to know. He denied taking part in the robbery, maintaining instead that he told Griffin and Christian Holder, a co-conspirator who arrived later, that their robbery plan was "crazy." West proffered an alibi that he was with his girlfriend, Ashley Tucker, in her apartment during the time of the murder but made conflicting statements about when he went to Tucker's apartment. In a later interview, Tucker told the police that West came and went from her apartment at times different from West's account.

According to Griffin, he and West jointly hatched the robbery scheme. After Griffin called for the pizza, they informed Holder of their plan. Holder agreed to participate and retrieved brass knuckles to use in the robbery. Holder testified that the trio then went to the apartment complex where Moore's body was found. Both Holder and Griffin claimed that, once there, they ran into a man named Larry Stelly, who asked them about their plans and told them he had a gun. Holder testified that West obtained Stelly's gun and shot Moore after he arrived to deliver the pizza.

Aside from a receipt for the pizza found in Moore's pocket, the only physical evidence the police discovered was a pizza warming bag in Griffin's shed. The gun was never located.

A jury convicted West of first degree felony murder. He was sentenced to life with the possibility of parole. The Oklahoma Court of Criminal Appeals ("OCCA") denied his direct appeal. The district court denied his petition for habeas corpus. West now seeks a COA to appeal that denial.

## II

West may not appeal the denial of § 2254 relief without a COA. § 2253(c)(1). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this standard, West must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotations omitted).

Construing West's pro se filings liberally, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), he alleges that his constitutional rights were denied in four ways: (1) he received ineffective assistance of counsel; (2) he was denied due process and the right to confront his accuser; (3) the evidence against him was insufficient to support his conviction; and (4) the jury was not instructed regarding lesser included offenses.

**A**

A petitioner claiming ineffective assistance of counsel must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In reviewing a state court's application of Strickland, we must be doubly deferential, inquiring "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

West first argues that his trial counsel were ineffective because they failed to call Tucker, his alibi witness. An affidavit submitted in West's direct appeal explains that although Tucker arrived in court pursuant to her subpoena, district attorney staff informed her that she could go home. Tucker was told that she did not need to worry about the defense's subpoena, because only the prosecution could "lock her up." West's attorneys searched the courthouse for Tucker and sent an investigator to her home, but ultimately decided to proceed without calling her because the jury had already heard West's alibi in a videotaped statement. The OCCA concluded that counsel's decision did not constitute ineffective representation, but was instead a strategic decision on the part

of defense counsel. We agree with the district court that the OCCA's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

Separately, West argues that his counsel were ineffective because they failed to request an alibi instruction. The OCCA rejected this claim in part because the jury was instructed on exculpatory statements. West's attorney understood the exculpatory statement instruction as including West's alibi. We thus agree with the district court that the OCCA's determination was reasonable.

Finally, West contends that his lawyers were ineffective because their ignorance of evidentiary rules opened the door to harmful evidence. West argues that his lawyers structured their trial strategy so as to prevent three witnesses from testifying. Those witnesses averred that Holder told them that West shot Moore. West's lawyers nevertheless cross-examined Holder about his motivation to fabricate testimony against West to obtain a reduced sentence, incorrectly believing that this would not open the door to Holder's prior consistent statements made to the three witnesses. The OCCA concluded that West was not prejudiced by this error because his attorneys were allowed to recall Holder and impeach him with inconsistencies in his testimony that they had previously avoided, making his statements to the three witnesses seem less credible. Despite West's attorneys' deficient performance, we agree with the district court that the OCCA's conclusion is neither contrary to, nor an unreasonable application of, Strickland.

**B**

West contends that improper hearsay testimony violated both the Confrontation Clause and his due process rights. Specifically, Holder stated twice that Stelly, who did not testify at West's trial, asked him "why Zonta shot him." Neither statement was elicited by the prosecution, and the judge admonished the jury to ignore the statements. Accordingly, the OCCA found that the errors were "harmless beyond a reasonable doubt."

"When reviewing state court determinations that a constitutional error was harmless, we ask whether the error had a substantial and injurious effect on the jury's decision." Banks v. Workman, 692 F.3d 1133, 1139 (10th Cir. 2012) (quotations omitted). "A substantial and injurious effect exists when the court finds itself in grave doubt about the effect of the error on the jury's verdict." Welch v. Workman, 639 F.3d 980, 992 (10th Cir. 2012) (quotations omitted).

We have no grave doubt about the effect of Holder's improper testimony on the jury's verdict.

**C**

West argues that there is insufficient evidence to corroborate the testimony from his accomplices implicating him as Moore's murderer. "When reviewing the sufficiency of the evidence on a habeas corpus petition, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt."
Turrentine v. Mullin, 390 F.3d 1181, 1197 (10th Cir. 2004) (quotations omitted).

Undeniably, there is no physical evidence linking West to the crime scene. And there is scant circumstantial evidence to corroborate testimony that he participated in the robbery, let alone that he pulled the trigger. But there is some corroborating evidence— the phone call was made from West's home, he admitted allowing Griffin to use his phone, and West knew many details of the crime. Viewing the facts in the light most favorable to the prosecution, a rational trier of fact could have found this evidence sufficient to corroborate the accomplices' testimony.

**D**

Lastly, West argues that the trial court failed to instruct the jury as to lesser included offenses. Oklahoma trial courts "are required to instruct on all lesser included or lesser related offenses warranted by the evidence." Childress v. State, 1 P.3d 1006, 1011 (Okla. Ct. Crim. App. 2000). However, because West did not raise this issue before the district court, it is forfeited. See United States v. Jarvis, 499 F.3d 1196, 1201 (10th Cir. 2007) ("Failure to raise an argument before the district court generally results in forfeiture on appeal.").

## III

For the foregoing reasons, we **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Carlos F. Lucero
Circuit Judge